**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GE RENEWABLES NORTH AMERICA, LLC,

                          Plaintiff,

            v.                                        Case No.: 1:23-cv-09274-PKC

SKF USA INC.

                          Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**
**OR, IN THE ALTERNATIVE, TO TRANSFER VENUE, OR COMPEL ARBITRATION**

**DUANE MORRIS LLP**

Christopher W. Healy
C. Neil Gray
1540 Broadway
New York, NY 10036
(212) 692-1000

John I. Coster IV
Gabrielle Pelura
230 Park Avenue, Suite 1130
New York, NY 10169
(212) 818-9200

*Attorneys for Defendant*
  *SKF USA Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND .............................................................................................................. 1

ARGUMENT ................................................................................................................... 5

I.     THE COURT LACKS PERSONAL JURISDICTION OVER SKF. ................................. 5

    A.     Plaintiff has failed to establish personal jurisdiction under New York law. .......... 6

        1.     The Court does not have general jurisdiction over SKF. ............................ 6

        2.     The Court does not have specific jurisdiction over SKF. ........................... 7

    B.     The exercise of personal jurisdiction over SKF would be inconsistent with Due Process.................................................................................................... 11

II.    THIS MATTER SHOULD BE DISMISSED OR TRANSFERRED BECAUSE THIS IS AN IMPROPER VENUE.................................................................................. 14

    A.     The Southern District of New York is not a proper venue for this action. ........... 14

    B.     This action must be dismissed or transferred because venue is improper. ........... 16

III.   IN THE ALTERNATIVE, THIS ACTION SHOULD BE TRANSFERRED UNDER 28 U.S.C. § 1404 TO THE NORTHERN DISTRICT OF GEORGIA. .............17

IV.    GERNA'S BREACH OF EXPRESS WARRANTY AND BREACH OF IMPLIED WARRANTY OF FITNESS FOR PARTICULAR PURPOSE CLAIMS FAIL AS A MATTER OF LAW....................................................................21

    A.     GERNA's express warranty claim fails............................................................ 22

    B.     Plaintiff fails to state a claim for breach of implied warranty of fitness for a particular purpose................................................................................... 24

CONCLUSION................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*,
828 F. Supp. 2d 557 (E.D.N.Y. 2011) ...................................................................... 6

*Abraham v. Volkswagen of Am., Inc.*,
795 F.2d 238 (2d Cir. 1986) ................................................................................ 22

*Aquiline Capital Partners LLC v. FinArch LLC*,
861 F. Supp. 2d 378 (S.D.N.Y. 2012) ................................................................. 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................... 21, 22

*Asoma Corp. v. SK Shipping Co., Ltd.*,
467 F.3d 817 (2d Cir. 2006) ............................................................................... 20

*Atlantic Marine Constr. Co. v. U.S. Dist. Court*,
571 U.S. 49 (2013)....................................................................... 15, 18, 19

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
171 F.3d 779 (2d Cir. 1999) ................................................................................. 8

*Barreto v. Westbrae Nat., Inc.*,
518 F. Supp. 3d 795 (S.D.N.Y. 2021) ................................................................. 23

*Beach v. United Airlines*,
202 F. Supp. 2d 807 (C.D. Ill. 2002) .................................................................. 16

*Berkshire Capital Grp., LLC v. Palmet Ventures, LLC*,
307 F. App'x 479 (2d Cir. 2008) ......................................................................... 11

*Blakely v. Lew*,
607 F. App'x 15 (2d Cir. 2015) ........................................................................... 17

*Brandir Int'l, Inc. v. Cascade Pac. Lumber Co.*,
No. 84 Civ. 1411 (CSH),
1988 WL 78382 (S.D.N.Y. July 18, 1988)............................................................. 12

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
137 S. Ct. 1773 (2017)................................................................................. 11, 12

*Burton v. Label, LLC*,
344 F. Supp. 3d 680 (S.D.N.Y. 2018) ................................................................. 22

*Catalano v. BMW of N. Am., LLC,*
  167 F. Supp. 3d 540 (S.D.N.Y. 2016) ...................................................... 22

*Catlin Indem. Co. v. New England Law/Boston,*
  No. 15 Civ. 4836 (JMF),
  2016 WL 447849 (S.D.N.Y. Feb. 4, 2016).............................................. 16

*CDS Bus. Servs. Inc. v. Sebbag,*
  No. 21 Civ. 1992 (JS) (ST),
  2022 WL 18562630 (E.D.N.Y. Dec. 16, 2022)........................................ 19

*Charles Schwab Corp. v. Bank of Am. Corp.,*
  883 F.3d 68 (2d Cir. 2018) ............................................................... 5, 12

*Citigroup Inc. v. City Holding Co.,*
  97 F. Supp. 2d 549 (S.D.N.Y. 2000) ...................................................... 18

*City of Pontiac Gen. Emps. Ret. Sys. v. Dell Inc.,*
  No. 14 Civ. 3644 (VSB),
  2015 WL 12659925 (S.D.N.Y. Apr. 30, 2015) ......................................... 17

*Corke v. Sameiet M. S. Song of Norway,*
  572 F.2d 77 (2d Cir. 1978) ................................................................. 14

*Daimler A.G. v. Bauman,*
  571 U.S. 117 (2014)......................................................................... 1, 7

*Del Toro v. Novus Equities, LLC,*
  No. 20-CV-1002,
  2021 WL 5567618 (S.D.N.Y. Nov. 29, 2021)......................................... 16

*Dental Recycling N. Am., Inc. v. Stoma Ventures, LLC,*
  No. 21 Civ. 9147 (KPF),
  2023 WL 3435617 (S.D.N.Y. May 12, 2023) ............................................ 8

*DiMuro v. Clinique Labs., LLC,*
  572 F. App'x 27 (2d Cir. 2014) ........................................................... 23

*Eckardt v. Radian Grp., Inc.,*
  No. 21 Civ. 00937 (MAD),
  2022 WL 3756711 (N.D.N.Y. Jan. 4, 2022)............................................ 17

*Faber v. Metro. Life Ins. Co.,*
  648 F.3d 98 (2d Cir. 2011) ................................................................. 21

*FDIC v. Bank of N.Y. Mellon,*
  369 F. Supp. 3d 547 (S.D.N.Y. 2019) ............................................... 21, 22

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011) ................................................................................................ 1, 12

*Gordian Grp., LLC v. Syringa Exploration, Inc.*,
   168 F. Supp. 3d 575 (S.D.N.Y. 2016) ......................................................................... 9

*Gun Hill Rd. Serv. Station, Inc. v. ExxonMobil Oil Corp.*,
   No. 08 Civ. 7956 (PKC),
   2013 WL 1804493 (S.D.N.Y. Apr. 18, 2013) ........................................................... 24

*Hanson v. Denckla*,
   357 U.S. 235 (1958) .................................................................................................. 12

*Herbert Ltd. P'ship v. Elec. Arts Inc.*,
   325 F. Supp. 2d 282 (S.D.N.Y. 2004) ...................................................................... 17

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*,
   No. 12 MDL 2413 (RRM),
   2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ......................................................... 22

*International Shoe Co. v. Washington*,
   326 U.S. 310 (1945) .................................................................................................. 12

*Kumar v. Opera Sols. OPCO, LLC*,
   No. 20 Civ. 6824 (GHW),
   2021 WL 4442832 (S.D.N.Y. Sep. 28, 2021) ........................................................... 18

*Martinez v. Bloomberg LP*,
   740 F.3d 211 (2d Cir. 2014) ..................................................................................... 19

*Minnette v. Time Warner*,
   997 F.2d 1023 (2d Cir. 1993) ................................................................................... 17

*Multiwave Sensor Inc. v. Sunsight Instruments, LLC*,
   No. 16 Civ. 1361 (GHW),
   2017 WL 1498058 (S.D.N.Y. Apr. 26, 2017) ........................................................... 18

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016) ..................................................................................... 22

*NuMSP, LLC v. St. Etienne*,
   462 F. Supp. 3d 330 (S.D.N.Y. 2020) ...................................................................... 20

*NY Drilling, Inc. v. TJM, Inc. LLC*,
   573 F. Supp. 3d 854 (E.D.N.Y. 2021) ...................................................................... 24

*Official Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
   549 B.R. 56 (S.D.N.Y. 2016) .................................................................................... 13

*Online Payment Sols. Inc. v. Svenska Handelsbanken AB*,
    638 F. Supp. 2d 375 (S.D.N.Y. 2009) ................................................. 13

*Palace Expl. Co. v. Petroleum Dev. Co.*,
    41 F. Supp. 2d 427 (S.D.N.Y. 1998) ................................................. 10

*Paterno v. Laser Spine Inst.*,
    24 N.Y.3d 370, 998 N.Y.S.2d 720 (2014) ................................................. 9

*Pausch Med. GmbH v. Pausch LLC*,
    No. 14 Civ. 1945 (PAC),
    2015 WL 783365 (S.D.N.Y. Feb. 24, 2015) ................................................. 18

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
    609 F.3d 30 (2d Cir. 2010) ................................................. 5

*Rosenblatt v Coutts & Co. AG*,
    750 F. App'x 7 (2d Cir 2018) ................................................. 9

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*,
    450 F.3d 100 (2d Cir. 2006) ................................................. 8

*Stewart Org., Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988) ................................................. 18

*Thackurdeen v. Duke Univ.*,
    130 F. Supp. 3d 792 (S.D.N.Y. 2015),
    *aff'd,* 660 F. App'x 43 (2d Cir. 2016) ................................................. 5, 6

*Wickers Sportswear, Inc. v. Gentry Mills, Inc.*,
    411 F. Supp. 2d 202 (E.D.N.Y. 2006) ................................................. 7, 8, 9

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) ................................................. 11, 12

**Statutes**

28 U.S.C. § 1391(b) ................................................. 5, 14

28 U.S.C. § 1391(b)(2) ................................................. 20

28 U.S.C. § 1391(b)(3) ................................................. 15, 16

28 U.S.C. § 1391(c) ................................................. 14

28 U.S.C. 1404 ................................................. 1, 5

28 U.S.C. § 1404(a) ................................................. 17

28 U.S.C. § 1406(a) .................................................................................................. 1, 5, 16

N.Y. CPLR § 301 ............................................................................................................. 6

N.Y. CPLR § 302(a) ..................................................................................................... 6, 8

## **Rules**

Fed. R. Civ. P. 12(b)(2) ................................................................................................. 1

Fed. R. Civ. P. 12(b)(3) ................................................................................................. 1

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 1, 21

Defendant SKF USA Inc. ("SKF") respectfully submits this memorandum of law in support of its motion, pursuant to Fed. R. Civ. P. 12(b)(2), (3), and (6), (i) to dismiss Plaintiff GE Renewables North America, LLC's ("GERNA") Amended Complaint (ECF. No. 22), (ii) alternatively, to transfer this action to the United States District Court for the Northern District of Georgia; and (iii) alternatively, to compel GERNA to arbitrate its claims as required by the agreements at issue.

## PRELIMINARY STATEMENT

Plaintiff GERNA improperly filed this action in New York, a state with which SKF has insufficient contacts to establish either general or specific jurisdiction. GERNA does not allege that SKF conducted business in New York. SKF is a Delaware corporation with its principal place of business in Pennsylvania. GERNA is a Delaware limited liability corporation with its principal place of business in Florida. Neither state nor federal law supports the exercise of personal jurisdiction over SKF in New York, including the holdings of the U.S. Supreme Court in *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011), and *Daimler A.G. v. Bauman*, 571 U.S. 117 (2014), curtailing the reach of personal jurisdiction. The proper venue for this dispute is the Northern District of Georgia, and this action should be dismissed in its entirety or transferred to the Northern District of Georgia pursuant to 28 U.S.C. §§ 1406(a) or 1404. Furthermore, GERNA fails to state a claim for breach of express warranty and breach of the implied warranty of fitness for a particular purpose, and these claims should be dismissed.

## BACKGROUND[1]

GERNA is a Delaware corporation with a principal place of business in Pensacola, Florida. Am. Compl. ¶ 4. SKF is a Delaware corporation with a principal place of business in

---

[1] SKF respectfully refers the Court to the accompanying Declaration of C. Neil Gray in Support of Defendant's Motion to Dismiss the Complaint or, in the Alternative, to Transfer Venue or Compel

Lansdale, Pennsylvania. *Id.* ¶ 5. GERNA and SKF entered into a Supply Agreement on or about January 1, 2015 (the "Supply Agreement") in connection with the purchase by GERNA from SKF of mainshaft bearings used in wind turbines. *See* Am. Compl. ¶ 1; Gray Decl. ¶ 2, Ex. A (attaching the Supply Agreement); Marchozzi Decl. ¶ 6. The Supply Agreement applies to purchase orders that GERNA issued to SKF to order specific components. Am. Compl. ¶ 17. GERNA purchased mainshaft bearings from SKF to be used in onshore wind turbines from 2017 to 2019. *Id.* ¶ 9. GERNA generally alleges that certain bearings failed prematurely and, as a result, SKF has breached an alleged 20-year warranty for the bearings. *Id.* ¶ 1.

GERNA alleges that three separate sets of standard purchase terms govern the purchase of the bearings at issue: (i) the "Original Purchase Terms," which were attached as Appendix 2 to the Supply Agreement; (ii) the "2016 Purchase Terms"; and (iii) the "2018 Purchase Terms." *Id.* ¶¶ 18, 21, 26; Gray Decl. ¶¶ 3-4, Ex. B (the 2016 Purchase Terms), Ex. C (the 2018 Purchase Terms). However, the Supply Agreement provides that "[a]ll purchases under this Agreement are subject to issuance of purchase orders ('Orders') by Buyer" pursuant to the Original Purchase Terms "and any agreed updates, changes, and modifications to the same." Supply Agreement ¶ 1(c) (Gray Decl. Ex. A). Additionally, Appendix 2 of the Supply Agreement states:

> The terms set forth in this Order take precedence over any alternative terms in any other document connected with this transaction unless such alternative terms are; (a) part of a written supply agreement ("Supply Agreement"), *which has been negotiated between the parties and which the parties have expressly agreed may override these terms in the event of a conflict;* and/or (b) set forth on the face of the Order to which these

---

Arbitration, dated April 26, 2024 (the "Gray Decl.") and the Declaration of Jeffrey Marchozzi in Support of Defendant's Motion to Dismiss the Complaint or, in the Alternative, to Transfer Venue or Compel Arbitration, dated April 26, 2024 (the "Marchozzi Decl."). The facts stated herein that are taken from Plaintiff's Amended Complaint ("Am. Compl.") (ECF 22) are accepted as pleaded solely for purposes of this motion. SKF expressly reserves the right to challenge the allegations of the Amended Complaint. Further, in its response to SKF's Pre-Motion Letter, GERNA stated that it "does not seek leave to further amend its Complaint at this time." (ECF 26).

terms are attached. In the event these terms are part of a written
Supply Agreement between the parties, the term "Order" used
herein shall mean any purchase order issued under the Supply
Agreement.

Supply Agreement, App. 2 ¶ 1 (Gray Decl. Ex. A) (emphasis added). The Supply Agreement

then provides that it is the controlling agreement in case of any conflict:

All Orders, acceptances and other writings or electronic
communications between the parties shall be governed by this
Agreement, and it is intended that reference to this Agreement
shall include all appendices hereto and, **in case of conflict, the
following order of precedence will prevail: i) this Agreement;
ii) the Appendices to this Agreement; iii) individual Orders;
and iv) drawings, specifications and related documents
specifically incorporated herein by reference.**

*Id.* (emphasis added). In other words, in the event of a conflict between provisions, the Supply

Agreement and Original Purchase Terms take precedence over any individual Orders or

drawings, specifications, and related documents. *Id.*

The Supply Agreement and purchase orders at issue here did not provide for shipment of

the bearings to New York. Marchozzi Decl. ¶ 14. The Supply Agreement does not provide a

location for delivery of any of the bearings. *Id.* The parties did not contract to supply goods to or

in New York. Marchozzi Decl. ¶ 11. The bearings were ultimately delivered to GERNA in

Florida and South Carolina. *Id.* ¶ 13. SKF did not collect New York sales tax in connection with

the Supply Agreement or any purchase order. *Id.* ¶ 15. SKF did not solicit the agreement in New

York. *Id.* ¶ 9. SKF never entered New York to perform any obligation under the Supply

Agreement or any purchase order. *Id.* ¶ 12. The bearings were manufactured outside of New

York, and then shipped to Florida or South Carolina. *Id.* ¶ 13. Most of the GERNA employees

with whom SKF negotiated the Supply Agreement were located in Budapest, Hungary. *Id.* ¶ 9.

There was one GERNA employee with whom SKF negotiated who was based in New York, and

another GERNA employee was based in Colorado. *Id.* The engineering and technical negotiations involved SKF employees located in Lansdale, Pennsylvania. *Id.* ¶ 10.

Further, the Notices section of the Supply Agreement required notices to be sent directly to a GERNA employee located in Hungary, with a courtesy copy to "Attn: Sourcing Counsel" located at General Electric's—not GERNA's—office in Schenectady, New York. Supply Agreement ¶ 4. Notices to SKF under the agreement were to be sent to SKF personnel based in Lansdale, Pennsylvania. *Id.* The sole references to New York in the Supply Agreement appear in the governing law section of the agreement and the aforementioned address for courtesy copies of notices to GE related to the Supply Agreement. Supply Agreement ¶ 4, App. 2 ¶ 20 (Gray Decl. Ex. A).

GERNA alleges that certain mainshaft bearings that were built to conform to a GERNA technical specification are failing or showing signs of "imminent failure," and that the total cost to GERNA will be at least $107 million. Am. Compl. ¶¶ 1-2. GERNA is allegedly seeking to recover its replacement costs, as well as other costs and expenses arising from the mainshaft bearing failures. *Id.* at 3. GERNA has not alleged where any of the mainshaft bearings were used or failed, other than a wind farm in Iowa (*id.* ¶ 30), and has not otherwise tied its claimed damages to New York. SKF at no time designed, manufactured, or used the bearings in New York. Marchozzi Decl. ¶ 13. GERNA has not alleged that any of the mainshaft bearings failed in New York or were even delivered to New York, which is understandable given that the bearings were delivered to Florida or South Carolina. *Id.*

Finally, the Supply Agreement requires GERNA to file any dispute in the Northern District of Georgia. *See* Supply Agreement ¶ 4, App. 2 ¶ 21.1 (Gray Decl. Ex. A) ("Litigation may be brought only in the U.S. District Court for the Northern District of Georgia or, if such

court lacks subject matter jurisdiction, in the State or Superior Court of Georgia in Cobb

County."). Additionally, SKF never expressly agreed that the forum selection clauses referenced

in the subsequent purchase terms included in the Orders override the Original Purchase Terms in

the event of a conflict. Marchozzi Decl. ¶ 18.

## ARGUMENT

Neither Plaintiff's allegations in the Complaint nor the facts of this dispute support this

Court's exercise of personal jurisdiction over SKF. Moreover, venue is improper in this Court

under 28 U.S.C. § 1391(b). As a result, this case should be dismissed or, in the alternative,

transferred pursuant to 28 U.S.C. §§ 1404 or 1406(a) to the Northern District of Georgia.

Further, GERNA's breach of express warranty claim fails as a matter of law because there is no

legal basis whatsoever for GERNA to claim the bearings at issue were subject to a 20-year

warranty. Likewise, GERNA unequivocally disclaimed any implied warranty of fitness for a

particular purpose. Accordingly, GERNA's claim for breach of implied warranty should be

dismissed.

## I.    THE COURT LACKS PERSONAL JURISDICTION OVER SKF.

"To defeat a motion to dismiss for lack of personal jurisdiction, a plaintiff 'must make a

*prima facie* showing that jurisdiction exists.'" *Charles Schwab Corp. v. Bank of Am. Corp.*, 883

F.3d 68, 81 (2d Cir. 2018) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34-35

(2d Cir. 2010)). "Such a showing entails making legally sufficient allegations of jurisdiction,

including an averment of facts that, if credited[,] would suffice to establish jurisdiction over the

defendant." *Id.* In deciding the motion, the Court does not draw "argumentative inferences" in

plaintiff's favor, nor does it accept as true a legal conclusion couched as a factual allegation.

*Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 798 (S.D.N.Y. 2015), *aff'd,* 660 F. App'x 43

(2d Cir. 2016) (citation omitted). And because a motion to dismiss for lack of personal

jurisdiction is inherently a matter requiring the resolution of factual issues outside of the pleadings, all pertinent documentation submitted by the parties may be considered in deciding the motion. *Id.* (citation omitted).

In New York, the determination of personal jurisdiction in a diversity case requires a two-step process. "First, a court will determine whether personal jurisdiction lies pursuant to New York's long-arm statute. . . . Second, a court must analyze whether personal jurisdiction comports with the basic requirements of due process." *Id*. (citing *A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 563 (E.D.N.Y. 2011)).

> **A.    Plaintiff has failed to establish personal jurisdiction under New York law.**

New York law recognizes two forms of jurisdiction over a foreign defendant: general jurisdiction, under N.Y. CPLR § 301, and specific jurisdiction, under N.Y. CPLR § 302(a). *Thackurdeen*, 130 F. Supp. 3d at 798. Under CPLR § 301, "a court may exercise general jurisdiction over a nondomiciliary defendant if the defendant is engaged in such a continuous and systematic course of doing business here as to warrant a finding of its presence in this jurisdiction." *Id.* at 799. Under CPLR § 302, a court may exercise specific jurisdiction over a nondomiciliary defendant if the claims arise from specific types of contacts with the forum. *Id.* at 798.

> **1.    The Court does not have general jurisdiction over SKF.**

GERNA alleges that personal jurisdiction exists in this Court "because the parties submitted to the jurisdiction of the Court by agreement and because the claims in this action arise from the purchase of goods by GERNA in New York." Am. Comp. ¶ 7. Because GERNA does not allege that SKF has engaged in a continuous and systemic course of doing business in New York or otherwise should be found to be present in New York, general jurisdiction does not apply. *See Thackurdeen*, 130 F. Supp. 2d at 799 ("Only in an exceptional case will a

corporation's operations in a forum other than its formal place of incorporation or principal place of business . . . be so substantial and of such a nature as to render the corporation at home in the state.") (quoting *Daimler*, 134 S. Ct. at 761 n.19). Further, in *Wickers Sportswear, Inc. v. Gentry Mills, Inc.*, the Court concluded that Plaintiff failed to make out a prima facie case of general jurisdiction because "Plaintiff did not allege that Defendant's solicitation is 'substantial and continuous,' let alone that Defendant has engaged in any other activities of substance in the state of New York." 411 F. Supp. 2d 202, 207 (E.D.N.Y. 2006). Here, the same applies, and GERNA does not and cannot allege that SKF has engaged in a continuous and systemic course of doing business in New York or otherwise should be found to be present in New York. Accordingly, SKF is not subject to general jurisdiction.

### 2.    The Court does not have specific jurisdiction over SKF.

GERNA's allegations also do not meet the requirements of CPLR § 302 to confer specific jurisdiction. A foreign corporation may be subject to specific jurisdiction in New York if it has one of four types of contacts with New York, and the claims against it arise from those contacts. Under N.Y. CPLR § 302(a), specific jurisdiction exists only if the foreign corporation:

> (1) transacts any business within the state or contracts anywhere to supply goods or services in the state;
>
> (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act;
>
> (3) commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

(4) owns, uses or possesses any real property situated within the state.

N.Y. CPLR § 302(a). Further, specific jurisdiction will apply only if the claims in question arise from the foregoing contacts. This second condition requires a showing that the contacts with the state have a "substantial relationship" or an "articulable nexus" to the cause of action. *Dental Recycling N. Am., Inc. v. Stoma Ventures, LLC*, No. 21 Civ. 9147 (KPF), 2023 WL 3435617, at *2 (S.D.N.Y. May 12, 2023) (citing *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006)).

Here, because GERNA's claims sound in contract, not tort, Sections 302(a)(2) and (3) cannot apply. Section 302(a)(4) also does not apply because GERNA's claims are not related to the ownership, use, or possession of real property in New York. Nor does GERNA allege that SKF transacts business within the state. Plaintiff only alleges that "the claims in this action arise from the purchase of goods by GERNA in New York." Am. Comp. ¶ 7. Therefore, the only possible basis for specific jurisdiction is whether SKF contracted anywhere to supply goods or services in New York. SKF did not.

The second prong of § 302(a)(1), extending jurisdiction to defendants who "contract anywhere to supply goods or services in the state," was added to "ease the plight of New York residents seeking to obtain jurisdiction over those outside its borders who may be deemed virtually or constructively to do business in this state." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 789 (2d Cir. 1999). "This provision captures cases where there are minimal contacts in New York, and, for example, a contract is made elsewhere for goods to be delivered or services to be performed in New York." *Id.; see also Wickers Sportswear,* 411 F. Supp. 2d at 209-211 (concluding Plaintiff failed to assert that the dispute involved goods delivered or services to be performed in New York where goods at issue were

delivered to New Hampshire, Tennessee, and Canada and no services were performed by Defendant in New York: "[T]herefore, the qualitative analysis weighs against a finding of jurisdiction finding no specific jurisdiction over claim for breach of contract for sale of goods where goods were shipped outside of New York.").

In applying the second prong of § 302(a)(1), the Court may consider: (1) whether the purchase orders and other documents provide for shipment to New York; (2) whether the defendant collected New York sales tax in connection with the transaction; (3) whether the defendant solicited the contract in New York; (4) whether the defendant entered New York for purposes of performing the contract; and (5) any other factor showing that defendant voluntarily and purposefully availed itself of the privilege of transacting business in New York. *Wickers Sportswear*, 411 F. Supp. 2d at 210 (citation omitted).

Further, the New York Court of Appeals has instructed that the "overriding criterion" in determining whether an entity "transacts any business" in New York within the meaning of the statute is whether the entity "purposefully avails itself of the privilege of conducting activities within New York." *Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 377, 998 N.Y.S.2d 720 (2014). That court has explained, "it is not the quantity but the quality of the contacts that matters under [the] long-arm jurisdiction analysis." *Id*. at 378, 998 N.Y.S.2d 720. The "totality of the circumstances" must be assessed in determining whether a defendant has "invoke[ed] the benefits and protections of [New York's] laws." *Rosenblatt v Coutts & Co. AG*, 750 F. App'x 7, 9-10 (2d Cir 2018) (citation omitted). Significantly, as this Court has emphasized, New York law does not support the proposition that simply being involved in "a transaction with a plaintiff in New York amounts to transacting business." *Gordian Grp., LLC v. Syringa Exploration, Inc.*, 168 F. Supp. 3d 575, 584 (S.D.N.Y. 2016).

This Court does not have specific jurisdiction over SKF under CPLR § 302(a). Here, SKF is a Delaware corporation with a principal place of business in Pennsylvania. Am. Compl. ¶ 5. GERNA is a limited liability company organized under the laws of Delaware with a principal place of business in Florida. Am. Compl. ¶ 4. The Supply Agreement and purchase orders do not provide for shipment of the bearings to New York. Marchozzi Decl. ¶ 14. Contrary to GERNA's allegation in its Amended Complaint, the parties did not contract to supply goods to or in New York. *Id.* ¶ 11. In fact, none of the bearings at issue were delivered to New York. *Id.* ¶ 13. The bearings were delivered to Florida or South Carolina. *Id.* SKF never entered New York for purposes of performing the contract. *Id.* ¶ 12. SKF did not collect New York sales tax in connection with the manufacture and sale of the bearings. *Id.* ¶ 15. SKF invested in Pennsylvania, not New York, to manufacture the bearings. *Id.* ¶ 13. The bearings themselves were not manufactured by SKF in New York. *Id.* The bearings were never warehoused in New York. *Id.*

Additionally, SKF did not solicit the Supply Agreement in New York. *Id.* ¶ 9. Rather, the vast majority of the Supply Agreement negotiations were conducted via conference call. *Id.* It is settled law in New York that interstate negotiations by telephone do not subject the caller to jurisdiction in New York. *See Palace Expl. Co. v. Petroleum Dev. Co.*, 41 F. Supp. 2d 427, 433 (S.D.N.Y. 1998) (It is "well-settled that, generally, telephone and mail contacts do not constitute 'transacting business' under the statute."). And in any event, it does not appear from its allegations that GERNA—the sole plaintiff—can be said to be in New York. *See* Am. Compl. ¶ 4.

Moreover, a New York choice of law provision does not confer personal jurisdiction over SKF. Indeed, courts applying New York law routinely hold that a New York choice of law

clause does not confer personal jurisdiction in New York in the face of otherwise minimal contacts by the foreign defendant with the state. *See, e.g.*, *Berkshire Capital Grp., LLC v. Palmet Ventures, LLC*, 307 F. App'x 479, 481 (2d Cir. 2008) (affirming dismissal for lack of personal jurisdiction where defendant agreed to be bound by New York law, but did not otherwise engage in business in New York, and the contract was to be performed entirely outside of New York).

Finally, any argument that the venue provision in the Confidentiality, Standstill, and Tolling Agreement between SKF and GERNA, dated November 23, 2021 (the "Tolling Agreement") governs in this action is wrong. That agreement provides that "[t]he Parties specifically consent to the jurisdiction of the federal courts sitting in New York **solely related to any lawsuits regarding this Agreement**." The instant action is not a lawsuit regarding the Tolling Agreement.

Under the circumstances, it is clear that GERNA has not established personal jurisdiction over SKF under New York's long-arm jurisdiction statute.

### B.    The exercise of personal jurisdiction over SKF would be inconsistent with Due Process.

Even if GERNA could establish specific personal jurisdiction over SKF under New York law (which it cannot), the exercise of jurisdiction over SKF also must be consistent with due process. The "primary concern" of this due process analysis is "the burden on the defendant." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017); *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

"Assessing this burden obviously requires a court to consider the practical problems resulting from litigating in the forum, but it also encompasses the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in the claims in

question." *Bristol-Myers*, 137 S. Ct. at 1780. "As a rule . . . this Court has inquired whether there was 'some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Goodyear Dunlop Tires Operations*, 564 U.S. at 924 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). This Court cannot exercise specific jurisdiction over a defendant pursuant to New York's long-arm statute unless it concludes that the defendant "purposefully availed itself of the privilege of doing business in the forum." *Charles Schwab Corp.*, 883 F.3d at 85 (2d Cir. 2018).

Other factors considered in this inquiry include "the forum [s]tate's interest in adjudicating the dispute"; "the interstate judicial system's interest in obtaining the most efficient resolution of controversies"; and "the shared interest of the several [s]tates in furthering fundamental substantive social policies." *World-Wide Volkswagen Corp.*, 444 U.S. at 292. Applying this analysis here demonstrates that exercising jurisdiction over SKF would offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

First, the burden on SKF is substantial. In contracting with a Delaware company headquartered in Florida for bearings to be manufactured outside of New York which were delivered to Florida and South Carolina, SKF could not have reasonably "anticipate[d] being haled into court" in New York. *Id.* at 297. "[F]oreseeability . . . is critical to [the] due process analysis[.]" *Brandir Int'l, Inc. v. Cascade Pac. Lumber Co.*, No. 84 Civ. 1411 (CSH), 1988 WL 78382, at *1 (S.D.N.Y. July 18, 1988) (internal quotation marks omitted) (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 292). SKF could not reasonably have foreseen being subject to suit in New York based on nothing more than a New York choice of law provision.

The other factors considered in *World-Wide Volkswagen* also dictate against exercising personal jurisdiction over SKF. New York's interest in adjudicating this dispute is minimal at best. There is an "almost nonexistent connection to New York." *Online Payment Sols. Inc. v. Svenska Handelsbanken AB*, 638 F. Supp. 2d 375, 391 (S.D.N.Y. 2009). The interstate judicial system's interest in obtaining the most efficient resolution of controversies, meanwhile, strongly points to adjudication elsewhere. Because all performance under the contract took place outside of New York, factual development, discovery, and securing the testimony of witnesses will be most efficiently accomplished in another forum. *See Aquiline Capital Partners LLC v. FinArch LLC*, 861 F. Supp. 2d 378, 391 (S.D.N.Y. 2012) (deciding against personal jurisdiction over a foreign defendant in part because "it would be time-consuming and financially onerous" to conduct discovery in New York, as all witnesses and documents were located elsewhere). Finally, the shared interest of the several states in furthering fundamental substantive social policies is not implicated, and no public policy compels or even supports adjudication of this dispute in New York.

To the extent the Court is inclined to consider the Plaintiff's interest in obtaining relief, that interest is slight, because Plaintiff is equally able to bring this suit in another forum (such as Georgia) where personal jurisdiction requirements are satisfied.[2] *Cf. Official Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 72 (S.D.N.Y. 2016) (plaintiff's interest held to be "strong" where it was "unclear" whether the cause of action could be brought elsewhere).

---

2 Because Plaintiff GERNA is headquartered in Florida, not New York, there is no reason to conclude that New York is especially convenient for GERNA either.

In sum, this Court lacks personal jurisdiction over SKF under New York law and the requirements of the Due Process Clause of the U.S. Constitution. Accordingly, for this reason alone, this action should be dismissed or, in the alternative, transferred to the Northern District of Georgia pursuant to 28 U.S.C. § 1406(a). *See Corke v. Sameiet M. S. Song of Norway*, 572 F.2d 77, 80-81 (2d Cir. 1978) (district court has power to transfer under Section 1406(a) where personal jurisdiction is lacking in transferor court).

## II. THIS MATTER SHOULD BE DISMISSED OR TRANSFERRED BECAUSE THIS IS AN IMPROPER VENUE.

Plaintiff also failed to file this action in the proper venue, necessitating either dismissal or transfer to a venue appropriate to hear this lawsuit.

### A. The Southern District of New York is not a proper venue for this action.

In its Complaint, Plaintiff alleges venue based on 28 U.S.C. § 1391(b). (Am. Compl. ¶ 8.) That statute provides that a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). For purposes of § 1391(b)(1), a corporate entity resides in any judicial district in which it is subject to the court's personal jurisdiction with respect to the civil action in question. *See* 28 U.S.C. § 1391(c). "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). It if does, venue is proper; if

it does not, venue is improper and the case must be dismissed or transferred under § 1406(a)." *Atlantic Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 56 (2013).

Plaintiff alleges venue in this District is appropriate for two reasons: (i) due to a forum selection clause in an agreement between the parties and (ii) "pursuant to 28 U.S.C. § 1391(b)(3) because SKF is subject to the Court's personal jurisdiction." Am. Compl. ¶ 8. Neither of these reasons is sufficient to establish venue in this Court.

In its Amended Complaint, GERNA relies on a forum selection clause to assert that venue is proper in this Court. But "[w]hether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in §1391(b)." *Atlantic Marine*, 571 U.S. at 56. "[Section] 1391 makes clear that venue in 'all civil actions' must be determined in accordance with the criteria outlined in that section." *Id*. In any event, GERNA relied on a forum selection clause from a non-controlling agreement (Am. Compl. ¶ 24) instead of the forum selection clause from the Original Supply Agreement—the agreement negotiated and executed by the parties regarding the bearings at issue and the one that states that it will take precedence when there is a conflict with any future amendments or agreements. *See* Supply Agreement ¶ 4, App. 2 (Gray Decl. Ex. A).

GERNA then relies on 28 U.S.C. § 1391(b)(3) to support venue. But this subsection is applicable only if a proper venue does not exist under 28 U.S.C. § 1391(b)(1) or (2): "The first two paragraphs of § 1391(b) define the preferred judicial districts for venue in a typical case, but the third paragraph provides a fallback option." *Atlantic Marine*, 571 U.S. at 56–57. And the only way § 1391(b)(3) could support venue is if this Court has personal jurisdiction over SKF. For all of the reason discussed in Point I, *supra*, the Court does not have personal jurisdiction

over SKF. In fact, none of the three bases for establishing venue set forth in § 1391(b) render venue in this Court proper.

First, SKF does not reside in New York for purposes of § 1391(b)(1) and § 1391(c), which require a showing of the Court's personal jurisdiction over SKF. *See* Am Compl. ¶ 5 (SKF is a Delaware corporation with a principal place of business in Pennsylvania); *see also* Section I, *supra* (demonstrating that this Court lacks personal jurisdiction over SKF).

Second, very few of the events giving rise to GERNA's claim occurred in the Southern District of New York, let alone a substantial part of them, so § 1391(b)(2) is not applicable. *See Catlin Indem. Co. v. New England Law/Boston*, No. 15 Civ. 4836 (JMF), 2016 WL 447849, at *2 (S.D.N.Y. Feb. 4, 2016) ("The Second Circuit has cautioned . . . that district courts should 'take seriously the adjective "substantial"' and keep in mind that the venue statute must be construed 'strictly.'") (internal quotations and citations omitted).

Third, because there is proper venue elsewhere under the other Sections of 1391(b), Section 1391(b)(3) does not allow for venue in this District. Because "venue is determined by the activities of Defendant —not Plaintiff," venue is not proper in this Court. *Beach v. United Airlines*, 202 F. Supp. 2d 807, 808 n.1 (C.D. Ill. 2002).

**B.    This action must be dismissed or transferred because venue is improper.**

Because venue in this Court is not proper under § 1391(b)(1), (2), or (3), this action must be dismissed for improper venue or, in the alternative, transferred to the Northern District of Georgia pursuant to 28 U.S.C. § 1406(a). Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Del Toro v. Novus Equities, LLC*, No. 20-CV-1002, 2021 WL 5567618, *3 (S.D.N.Y. Nov. 29, 2021) (quoting 28 U.S.C. § 1406(a)). The decision "whether to dismiss or

transfer a case 'lies within the sound discretion of the district court.'" *Blakely v. Lew*, 607 F. App'x 15, 18 (2d Cir. 2015) (quoting *Minnette v. Time Warner,* 997 F.2d 1023, 1026 (2d Cir. 1993)). Further, courts review whether to transfer matters including a valid forum selection clause under the same factors as § 1404(a). *See Eckardt v. Radian Grp., Inc.*, No. 21 Civ. 00937 (MAD), 2022 WL 3756711, at *9 (N.D.N.Y. Jan. 4, 2022). Because the parties negotiated and agreed to venue and jurisdiction in the Original Supply Agreement, if the Court declines to dismiss the action then it must transfer the case to the Northern District of Georgia as the parties agreed.

## III.    IN THE ALTERNATIVE, THIS ACTION SHOULD BE TRANSFERRED UNDER 28 U.S.C. § 1404 TO THE NORTHERN DISTRICT OF GEORGIA.

Even if the Court concludes that jurisdiction and venue are proper in this Court, the Court should nevertheless transfer this action to the Northern District of Georgia pursuant to 28 U.S.C. § 1404.

Under 28 U.S.C. § 1404, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In examining a motion to transfer under § 1404(a), courts engage in a two-part inquiry:

<u>First</u>, the Court must ask whether the case "might have been brought in the proposed transferee district." *See Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 285 (S.D.N.Y. 2004). An action "might have been brought" in the proposed transferee district if venue, personal jurisdiction, and subject matter jurisdiction would have been proper in the transferee court at the time of filing. *City of Pontiac Gen. Emps. Ret. Sys. v. Dell Inc.*, No. 14 Civ. 3644 (VSB), 2015 WL 12659925, at *2 (S.D.N.Y. Apr. 30, 2015).

Second, if the threshold inquiry is satisfied, the Court determines whether a transfer is appropriate. *Kumar v. Opera Sols. OPCO, LLC*, No. 20 Civ. 6824 (GHW), 2021 WL 4442832, at *44 (S.D.N.Y. Sep. 28, 2021). In so doing, the Court considers the following factors to determine whether to grant the requested transfer:

> (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.

*Multiwave Sensor Inc. v. Sunsight Instruments, LLC*, No. 16 Civ. 1361 (GHW), 2017 WL 1498058, at *6 (S.D.N.Y. Apr. 26, 2017). The list of factors is not exhaustive. *Pausch Med. GmbH v. Pausch LLC*, No. 14 Civ. 1945 (PAC), 2015 WL 783365, at *1 (S.D.N.Y. Feb. 24, 2015). Furthermore, "[t]here is no rigid formula for balancing these factors[,] and no single one of them is determinative." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000). Rather, "weighing the balance is essentially an equitable task left to the Court's discretion." *Id.* (internal quotation marks omitted).

However, where parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause without regard to the other factors highlighted in Section 1404(a). *See Atlantic Marine*, 571 U.S. at 62. "'The calculus changes . . . when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Id.* at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). The "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Atlantic Marine*, 571 U.S. at 33 (Kennedy, J., concurring). For that reason,

and because the overarching consideration under §1404(a) is whether a transfer would promote "the interest of justice," "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Id.* at 33. Indeed, the presence of a valid forum-selection clause means that a "plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* at 63.

Additionally, "a court evaluating a defendant's §1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests" because the parties have waived "the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* at 64; *see CDS Bus. Servs. Inc. v. Sebbag*, No. 21 Civ. 1992 (JS) (ST), 2022 WL 18562630, at *17 (E.D.N.Y. Dec. 16, 2022) ("objections to venue are waived by a forum selection clause"); *Martinez v. Bloomberg LP*, 740 F.3d 211, 229 (2d Cir. 2014) ("When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for the pursuit of the litigation.") (quoting *Atlantic Marine*, 571 U.S. at 63). A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum, and although it can consider arguments about public-interest factors, "those factors will rarely defeat a transfer motion" and such forum selection clauses control except in "unusual cases." *Atlantic Marine*, 571 U.S. at 64.

Finally, where it is alleged that there are multiple potentially controlling contracts that each contain a forum selection clause designating a different forum, "'the court must decide as a matter of law . . . which forum selection clause governs.'" *NuMSP, LLC v. St. Etienne*, 462 F.

Supp. 3d 330, 347–48 (S.D.N.Y. 2020) (quoting *Asoma Corp. v. SK Shipping Co., Ltd.*, 467 F.3d 817, 822 (2d Cir. 2006)).

Here, GERNA could have filed this suit in the Northern District of Georgia. Because the Original Purchase Terms contain the parties' agreement to submit to the personal jurisdiction and venue, venue is appropriate in the Northern District of Georgia. *See* 28 U.S.C. § 1391(b)(2).

As discussed above, GERNA does not—and cannot—allege that the parties ever negotiated or "agreed" to any "updates, changes and modifications" that would supersede the Original Purchase Terms. Even if the Court were to consider the forum clauses in the 2016 Purchase Terms and 2018 Purchase Terms, those forum clauses conflict with the forum selection clause in the Original Purchase Terms. Because "the Appendices to [the Supply] Agreement" take precedence over "individual Orders"—and any documents incorporated by reference in any such Orders—conflicts between the Original Purchase Terms and any subsequent boilerplate purchase terms must be resolved in favor of the former. Supply Agreement, App. 2 ¶ 1 (Gray Decl. Ex. A).

Even if, *arguendo*, subsequent purchase terms could supersede the Supply Agreement, the 2018 Purchase Terms specifying mediation and arbitration as the proper fora for any dispute (*see* 2018 Purchase Terms at ¶ 20.2 (Gray Decl. Ex. C)[3] would supersede the 2016 Purchase Terms (*id.* ¶ 24, stating that this Order "supersedes any prior or contemporaneous agreements,

---

3 Paragraph 20.2 of the 2018 Purchase Terms provides: "In the event of any dispute arising out of or in connection with the present contract, the parties agree to submit the matter to mediation under the Mediation Rules of the International Chamber of Commerce (the "ICC Mediation Rules", without prejudice to either party's right to seek emergency or interim or conservatory measures of protection at any time. If the Dispute has not been settled pursuant to the ICC Mediation Rules within thirty (30) days following the filing of a request for mediation or within such other period as the parties may agree in writing, such Dispute shall be finally settled under the Rules of Arbitration and Conciliation of the ICC (the "ICC Rules") by one or three arbitrators appointed in accordance with such ICC Rules. The place for arbitration shall be New York, New York, U.S., and proceedings shall be conducted in English."

whether written or oral, between the parties") as of March 26, 2018, and control in this matter. Regardless of which Purchase terms control, venue is not proper in the venue GERNA chose.

For all of these reasons, the valid forum selection clause from the Supply Agreement compels transfer of this case to the Northern District of Georgia, where jurisdiction exists and venue is unquestionably proper. Accordingly, if this Court declines to dismiss or transfer this action for lack of personal jurisdiction and/or lack of proper venue, SKF respectfully requests that the Court transfer this action to the Northern District of Georgia pursuant to 28 U.S.C. § 1404.

## IV.    GERNA'S BREACH OF EXPRESS WARRANTY AND BREACH OF IMPLIED WARRANTY OF FITNESS FOR PARTICULAR PURPOSE CLAIMS FAIL AS A MATTER OF LAW.

The Court should dismiss GERNA's warranty claims pursuant to Fed. R. Civ. P. 12(b)(6) because there is no legal basis to claim the bearings at issue were subject to a 20-year warranty and GERNA expressly disclaimed any implied warranty of fitness for a particular purpose.

On a motion to dismiss under Rule 12(b)(6), "a court should 'draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief.'" *FDIC v. Bank of N.Y. Mellon*, 369 F. Supp. 3d 547, 552 (S.D.N.Y. 2019) (quoting *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011)). "Thus, '[t]o survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' … 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Moreover, 'the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare

recitals of a cause of action's elements, supported by mere conclusory statements.'" *Id.* (quoting *Iqbal*, 556 U.S. at 663).

Although generally limited to the allegations in the complaint, the Court may also consider documents, such as contracts, that are "integral" to the complaint. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 234 (2d Cir. 2016). Here, the plaintiffs' claims are entirely based upon the Supply Agreement and various purchase terms, and the Amended Complaint incorporates (albeit selectively) the language from the Supply Agreement. *See* Am. Compl. ¶ 19 (alleging that the "Purchase Terms attached to the Supply Agreement contain various express warranties" and proceeds to cherry pick certain phrases from that section of the Supply Agreement); *id.* ¶¶ 18-27 (quoting from the Supply Agreement and Purchase Terms). The Court may consider these documents on this motion. *See Burton v. Label, LLC*, 344 F. Supp. 3d 680, 692 n.4 (S.D.N.Y. 2018) (considering contract that was "integral to the complaint" on motion to dismiss).

A.      GERNA's express warranty claim fails.

Under New York law, a breach of express warranty claim is deficient if the alleged breach occurred after the expiration of the relevant warranty period. *See, e.g., Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 250 (2d Cir. 1986). Express warranty claims must be founded on express representations—that is, a literal affirmation of fact or promise about the specific thing Plaintiff alleges to be untrue. *See In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12 MDL 2413 (RRM), 2013 WL 4647512, at *26-27 (E.D.N.Y. Aug. 29, 2013). To allege breach of the warranty, a plaintiff must allege the goods purchased do not conform to the promise made by the seller. *See, e.g., Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 554 (S.D.N.Y. 2016).

The Court should dismiss GERNA's breach of express warranty claim because there is no legal basis to claim that the bearings at issue were subject to a 20-year warranty. GERNA concedes that the Original Purchase Terms attached to the Supply Agreement, the 2016 Purchase Terms, and the 2018 Purchase Terms all set forth a 24-month warranty period. Am. Compl. ¶¶ 19, 22, 26. For example, the original Purchase Terms attached to the Supply Agreement provide, "[t]he foregoing warranties shall in the case of wind turbine related goods and services apply for a period of 24 months." Supply Agreement, App. 2 ¶ 9.2 (Gray Decl. Ex. A).

Despite acknowledging the express language of the purchase terms, GERNA contends that a technical specification setting out a "useful life" period of 20 years equates to SKF offering a 20-year warranty. *See, e.g.*, Am. Compl. ¶ 78. GERNA's claim is in direct contradiction of the plain language of the express warranty contained in the Supply Agreement. Nowhere in the warranty section does it provide for a 20-year warranty. *See* Supply Agreement, App. 2 ¶ 9 (Gray Decl. Ex. A). Moreover, GERNA failed to consider the agreed upon precedence of terms when interpreting the parties' agreements, under which the provisions of the Supply Agreement and the explicit 24-month warranty period in the Original Purchase Terms take precedence over the technical specification on which GERNA relies. *See supra* at 2-3 (discussing precedence of terms).

SKF did not expressly provide a 20-year warranty. Accordingly, GERNA does not have any claim for a breach of an express warranty—because the asserted warranty simply does not exist—and its claim should be dismissed for failure to state a claim. *See DiMuro v. Clinique Labs., LLC*, 572 F. App'x 27, 32 (2d Cir. 2014) (affirming dismissal of claims for breach of express warranty and breach of implied warranty for failure to state a claim); *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 806–07 (S.D.N.Y. 2021) (Castel, J.) (same).

**B.      Plaintiff fails to state a claim for breach of implied warranty of fitness for a particular purpose.**

GERNA ignores the unambiguous language in the Original Purchase Terms by which

SKF disclaims any warranty beyond the Supply Agreement:

> EXCEPT FOR THE WARRANTIES SET FORTH IN THIS
> SECTION 9, IN THIS ORDER OR IN THE SUPPLY
> AGREEMENT, SELLER MAKES NO OTHER WARRANTIES
> EITHER EXPRESS OR IMPLIED, **INCLUDING THE
> IMPLIED WARRANTY FITNESS FOR A PARTICULAR
> PURPOSE**.

Original Purchase Terms, App. 2 ¶ 9.3 (Gray Decl. Ex. A) (emphasis added). Under New York

law, "parties to a contract may exclude or modify implied warranties so long as the warranty

disclaimer is conspicuous and specific." *Gun Hill Rd. Serv. Station, Inc. v. ExxonMobil Oil

Corp.*, No. 08 Civ. 7956 (PKC), 2013 WL 1804493, at *11 (S.D.N.Y. Apr. 18, 2013) (Castel, J.)

(quotations omitted); *see also NY Drilling, Inc. v. TJM, Inc. LLC*, 573 F. Supp. 3d 854, 859

(E.D.N.Y. 2021) (holding that "the disclaimers at issue bear characteristics that are sufficiently

conspicuous to overcome their suboptimal placement. The text is in all capital letters and it

clearly and explicitly disclaims the warranties of fitness.").

Here, the warranty disclaimer language could not be more conspicuous and specific. Like

the text in *NY Drilling, Inc.*, the warranty disclaimer text here is in all capital letters and clearly

and explicitly disclaims the implied warranty of fitness for a particular purpose. SKF

unequivocally disclaimed any implied warranty of fitness for a particular purpose. Accordingly,

pursuant to Fed. R. Civ. P. 12(b)(6), GERNA's breach of the implied warranty of fitness for a

particular purpose should be dismissed for failure to state a claim.

## <u>CONCLUSION</u>

Because personal jurisdiction and venue are lacking in this Court, SKF respectfully

requests that this Court dismiss this action pursuant to Fed. R. Civ. P. 12(b)(2) or 12(b)(3).

Alternatively, SKF respectfully requests that the Court transfer this action to the Northern

District of Georgia pursuant to 28 U.S.C. §§ 1404 or 1406(a) or compel GERNA to arbitrate its

claims. Furthermore, because GERNA has failed to state a claim for both breach of express

warranty and breach of the implied warranty of fitness for a particular purpose, the Court should

dismiss both of these claims pursuant to Fed. R. Civ. P. 12(b)(6).

Dated: New York, New York
        April 26, 2024

                                        Respectfully Submitted,

                                        **DUANE MORRIS LLP**

                                        By:    */s/ C. Neil Gray*
                                               Christopher W. Healy
                                               C. Neil Gray
                                        1540 Broadway
                                        New York, New York 10036
                                        Phone: (212) 692-1000
                                        Email: cwhealy@duanemorris.com
                                               cngray@duanemorris.com

                                               John I. Coster IV
                                               Gabrielle Pelura
                                        230 Park Avenue, Suite 1130
                                        New York, NY 10169
                                        (212) 818-9200
                                        Email: jicoster@duanemorris.com
                                               gpelura@duanemorris.com

                                        *Attorneys for Defendant*
                                          *SKF USA Inc.*

DM1\15170667