UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GE RENEWABLES NORTH AMERICA, LLC,<br><br>       Plaintiff,<br><br>    v.<br><br>SKF USA INC.,<br><br>       Defendant. | Case No.: 1:23-cv-09274-PKC |

### REPLY DECLARATION OF JEFFREY MARCHOZZI

I, Jeffrey Marchozzi, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am over the age of 18 and am generally familiar with the Plaintiff's allegations in the above-captioned matter. Except where I indicate otherwise, all of the information contained herein is based on my personal knowledge and recollection. If called and sworn as a witness, I could and would competently testify to these facts.

2. I am currently Key Account Manager-Seals at SKF USA Inc. ("SKF"), a position I have held since January 2023. I respectfully submit this Declaration in further support of Defendant SKF's Motion to Dismiss the Complaint or, in the Alternative, to Transfer Venue, or Compel Arbitration.

3. I am aware of and familiar with the circumstances leading to the execution of the Supply Agreement[1] and subsequent addenda to the Supply Agreement.

4. Although one or two of the meetings between Steven Curtis of SKF and David Mollevik of GE Vernova leading to the execution of Addendum Number Two to the Supply

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Declaration of Jeffrey Marchozzi in Support of Defendant's Motion to Dismiss the Complaint or, in the Alternative, to Transfer Venue or Compel Arbitration, dated April 26, 2024, offered in this action (ECF No. 38).

Agreement may have taken place in Schenectady, New York, those meetings were a lesser aspect of the overall project, relationship, and negotiations between SKF and GE.

5. To my knowledge and understanding, essentially all other aspects of the commercial relationship between SKF and GE pertaining to the SKF mainshaft bearings at issue in this litigation—including the negotiation of the Supply Agreement (and Addendums Number One and Three to the Supply Agreement), the design, qualification, approval, manufacture, delivery, payment, installation, and use of the bearings, and the subsequent efforts to identify a root cause for the failure of those bearings that failed—took place between and among SKF, GE, and third-party employees and locations either physically outside of New York or using e-mail or telephone or video conferencing.

6. SKF designed the bearings at issue in Pennsylvania based on a technical specification provided electronically to SKF by GE.

7. Michael Woodry, Graham Smith, Zhi Hu, Chris Abreu, and Steve Luchetta of GE qualified and approved the SKF design for the bearings at issue. To my knowledge and understanding, none of those individuals lived or worked in New York. All of the SKF personnel involved in the qualification and approval process were located in Lansdale, Pennsylvania; Hanover, Pennsylvania; or Flowery Branch, Georgia.

8. SKF manufactured all of the bearings at issue at SKF facilities in Flowery Branch, Georgia; Hanover, Pennsylvania; and at an SKF facility in India.

9. GE's shipping agent took possession of all the bearings from SKF's manufacturing locations. I understand GE's shipping agent delivered all of the bearings to GE facilities outside New York, with the majority being delivered to GE's facility in Pensacola, Florida, for assembly in wind turbines.

10. I understand that all payments by GE to SKF for the bearings at issue were made by check, wire, or other electronic payment received by SKF outside New York.

11. SKF performed its root cause analysis in various locations outside New York, including Lansdale, Pennsylvania; Plymouth, Michigan; Flowery Branch, Georgia; Germany; and The Netherlands. SKF and GE performed joint investigations at GE's Greenville, South Carolina, facility and SKF's Flowery Branch, Georgia, facility. SKF typically conducted weekly virtual meetings with GE in connection with SKF's root cause analysis; none of the SKF team participating in those efforts were located in New York.

12. In Section 21.1 of Appendix 2 of the Supply Agreement (entitled "Dispute Resolution"), the parties chose the United States District Court for the Northern District of Georgia as the exclusive forum for litigation involving controversies, disputes, or differences arising out of the Supply Agreement.  SKF would not have, and did not, select that forum during the negotiation of the Supply Agreement and Appendix 2.  Rather, I understand that the designation of the Northern District of Georgia was in the template GE Power & Water Standard Terms of Purchase Rev. A that became Appendix 2 of the Supply Agreement following the parties' negotiations.  Appendix 2 represents the parties' final agreement and intent with respect to the exclusive venue for litigation arising out of the Supply Agreement.

13. In or about June 2019, I began negotiating an "Addendum Number Three" to the Supply Agreement. Those negotiations took place by email and in Budapest, Hungary, with Anett Megyeri, the then-Global Commodity Leader for Main Bearings for GE Renewable Energy located in Hungary, and David Mollevik, the current Senior Sourcing Staff Manager–Buying Procurement at GE Vernova Inc. in Schenectady, New York.

14. The parties negotiated from June to December 2019.  On December 18, 2019, I sent a final Addendum Number Three to the Supply Agreement by email to Ulrich Kugler and

3

Mallika Ramaswamy at GE Renewable Energy for execution. A copy of the email I sent to Mr. Kugler and the accompanying Addendum Number Three are attached as Exhibit 1 to the Reply Declaration of C. Neil Gray, dated June 7, 2024, which I understand will be filed contemporaneously herewith.

15. The purpose of Addendum Number Three to the Supply Agreement was to (i) extend the Supply Agreement "until each party's obligations under all Orders are fulfilled," (ii) agree that "all orders issued on or after December 31, 2018 shall be governed by [the Supply Agreement]", and (iii) provide a new appendix to the Supply Agreement addressing the "Description, Quantity and Price List of Components," including the orders the parties had agreed to cancel and the orders the parties agreed would be firm and non-cancellable. Addendum Number Three included orders with delivery dates as late as December 22, 2020.

16. SKF did not receive an executed copy of Addendum Number Three from GE.

17. Given the nature of the Supply Agreement and Addendum Number Three, there were multiple occasions for performance, or acceptance of performance, by the parties. Despite the lack of a fully executed copy of Addendum Number Three, (i) GE placed purchase orders for the volume of units of SKF Part Number 240/750 ECA/W33V039RE10 (which is the mainshaft bearing at issue in this dispute) described in Appendix 1 of Addendum Number Three ("Appendix 1"), (ii) SKF cancelled the firm and non-cancellable purchase orders specified in Table 1 of Appendix 1 previously placed by GE and made no claim for any equitable cancellation costs, (iii) GE made no payments on the cancelled purchase orders specified in Table 1 of Appendix 1 despite those purchase orders being firm and non-cancellable, (iv) SKF manufactured for and delivered to GE the volume of units of SKF Part Number 240/750 ECA/W33V039RE10 described in Appendix 1, (v) GE paid for the units SKF delivered to it at the price specified in each purchase order, and (vi) GE made payments for these units in

accordance with the prior payment history under the Supply Agreement and not in accordance with the 120-day payment terms specified in the then-current GE terms of purchase.

18.　　GE was fully aware of the negotiated terms of Addendum Number Three and had the opportunity to object to those terms, but nevertheless performed pursuant to and acquiesced in those terms without objection.

19.　　Indeed, notwithstanding the apparent lack of a fully executed agreement, GE and SKF in all respects honored and complied with the terms of Addendum Number Three, including treating the Supply Agreement as in effect in all respects until at least December 22, 2020.

[*Remainder of page intentionally left blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 7, 2024,
       in Plymouth Meeting, Pennsylvania

_____
JEFFREY MARCHOZZI