UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

GE RENEWABLES NORTH AMERICA, LLC,

                              Plaintiff,                        23-cv-9274 (PKC)

        -against-                             OPINION AND ORDER


SFK USA INC.
                              Defendant.

----------------------------------------------------------x

CASTEL, U.S.D.J.:

            Plaintiff GE Renewables North America, LLC ("GERNA") brings claims against

SFK USA Inc. for breach of contract, breach of express warranty, breach of implied warranty of

fitness for a particular purpose, and indemnification.  GERNA also seeks a declaratory judgment

of liability.  SFK moves to dismiss the Complaint for lack of personal jurisdiction, improper

venue, and failure to state a claim.  Rules 12(b)(2), (b)(3), & (b)(6), Fed. R. Civ. P.  In the

alternative, SFK asks that the action be transferred to the U.S. District Court of the Northern

District of Georgia under 28 U.S.C. § 1404.  For reasons that will be explained, SFK's motion to

transfer will be granted.


BACKGROUND

            The Court accepts the well-pleaded allegations in the Amended Complaint as true

and draws all reasonable inferences in favor of the plaintiffs, as the non-moving party.  See

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

GERNA manufactures and sells wind turbines for power generation. (Amend. Compl't ¶ 4.) SFK manufactures and sells, among other products, main bearings for wind turbines. (Id. ¶ 5.) Effective January 1, 2015, GERNA—then part of the GE Power & Water Business before it was rebranded in November 2015—and SFK were parties to a "Supply Agreement." (Id. ¶¶ 17, 21.) The Supply Agreement applied to purchase orders for specific components, which were listed in an attached Appendix 1. (Id. 17.)

On or about December 14, 2017, GERNA and SFK amended the Supply Agreement in an "Addendum Number Two." (Id. ¶ 25.) The addendum extended the term of the Supply Agreement to December 31, 2018, and added a main bearing, SFK part number 240/750 ECA/W33V039RE10, to Appendix 1 of the Agreement. (Id.) SFK had designed this main bearing to meet GERNA's part specifications. (Id. ¶ 10.) Further, the Supply Agreement stated that Purchase Orders made under the Agreement were governed by the "GE Power & Water Standard Terms of Purchase Rev. A" ("the 2016 Purchase Terms") . . . and any agreed updates, changes, and modifications to the same." (Id. ¶ 18.) The 2016 Purchase Terms contained various warranties. (Id. ¶ 22.) However, the Supply Agreement provided that if there was a conflict between the terms of the Supply Agreement and the Purchase Terms, the Supply Agreement would take precedence. (ECF 39-1 ¶ 1(c).)

On November 28, 2017, GERNA issued its first Purchase Order for SFK main bearing identified by part number 240/750 ECA/W33V039RE10. (Amend. Compl't ¶ 28.) Throughout 2017 until June 2019, GERNA issued 76 Purchase Orders for this same part. (Id.) GERNA purchased a total of 1,723 main bearings: 10 units in 2017; 1,306 units in 2018; and 407 units in 2019. (Id. ¶ 15.) In November 2018, GERNA wind turbines that used SFK main

bearings began commercial operation at wind farms.  (Id. ¶ 16.)  In June 2019, for reasons not specified in the Complaint, GERNA discontinued purchasing SFK main bearings.  (Id. ¶ 15.)

In April 2021, an SFK main bearing at a wind farm in Iowa experienced a failure. (Id. ¶ 30.)  Following this first failure, there were other, alleged failures of SFK main bearings. (Id. ¶ 31.)  On November 23, 2021, GERNA and SFK entered a Confidentiality, Standstill and Tolling Agreement ("Tolling Agreement") regarding potential claims arising from the main bearing failures.  (Id. ¶ 36.)  On April 28, 2023, following unsuccessful settlement negotiations, GERNA terminated the Tolling Agreement.  (Id. ¶¶ 36, 40-5.)

As of May 2023, GERNA allegedly detected 389 potential failures of SFK main bearings.  (Id. ¶ 31.)  GERNA claims that the replacement costs for the main bearings is at least $107 million.  (Id. ¶ 33.)  The Amended Complaint asserts five claims against SFK: (1) breach of contract; (2) breach of express warranty; (3) breach of implied warranty of fitness for a particular purpose; (4) indemnification; and (5) a declaratory judgment of liability.

SFK moves to dismiss the Amended Complaint for lack of personal jurisdiction, improper venue, and failure to state a claim with respect to the claims of breach of express warranty and breach of implied warranty of fitness for a particular purpose.  In the alternative, SFK asserts that, due to the Supply Agreement's forum-selection clause, the action should be transferred to the U.S. District Court of the Northern District of Georgia.

MOTION TO DISMISS STANDARD ON PERSONAL JURISDICTION AND VENUE

In responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff has the burden to establish that the court has jurisdiction over the defendant. DiStefano v. Carozzi North America, Inc., 286 F.3d 81, 84 (2d Cir. 2001). A plaintiff must both "have a state-law statutory basis for jurisdiction and demonstrate that the exercise of personal jurisdiction comports with due process." Charles Schwab Corp. v. Bank of America Corp., 883 F.3d 68, 82 (2d Cir. 2018). When a court, as here, relies on pleadings and affidavits, the plaintiff need only make a prima facie showing of personal jurisdiction. DiStefano, 286 F.3d at 84.

Similarly, on a motion to dismiss for improper venue under Rule 12(b)(3), the burden of proof lies with the plaintiff to show that venue is proper. Phillips v. Audio Active Ltd., 494 F.3d 378, 384 (2d Cir. 2007). "On a motion to dismiss for improper venue, a court generally accepts as true the factual allegations in the non-moving party's pleadings, and draws all reasonable inferences in favor of the party opposing the motion." Caitlin Indemnity Co. v. New England Law/Boston, 15-CV-4836 (JMF), 2016 WL 447849, at *1 (S.D.N.Y. Feb. 4, 2016). In deciding a motion to dismiss for improper venue, the court may also consider pleadings and affidavits outside of the complaint. Gulf Insurance Co. v. Glasbrenner, 417 F.3d 353, 355 (2d Cir. 2005) (citing CutCo Industries, Inc. v. Naughton, 806 F.2d 361, 364-65 (2d Cir. 1986)). Where no evidentiary hearing has been held, "the plaintiff need only make a prima facie showing of venue." Id. Upon a finding of improper venue, a court may either dismiss the action, or "if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

DISCUSSION

The Court concludes that there is a basis for personal jurisdiction over SFK and the exercise of personal jurisdiction is consistent with due process. While venue in this district is not proper, the Court exercises its discretion to transfer the action to a district where it might have been brought. Indeed, the Court concludes that the forum-selection clause in the Supply Agreement naming the federal or state courts of Georgia as the exclusive fora is controlling. The action will be transferred to the Northern District of Georgia. The Court declines to reach SFK's motion to dismiss to the extent it seeks dismissal for failure to state a claim or, alternatively, to compel arbitration, which is left for the transferee Court.

I.     Personal Jurisdiction.

The Court first examines whether it has personal jurisdiction over SFK as jurisdiction must be assessed prior to the issue of venue or consideration of the merits. Arrowsmith v. United Press International, 320 F. 2d 219, 221 (2d Cir. 1963). "[T]he amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee." Id. at 223. Therefore, New York law controls the Court's analysis. As the long-arm statute of New York "does not coincide with the limits of the Due Process clause," the Court must engage in both a statutory and constitutional analysis. Best Van Lines, Inc. v. Walker, 490 F.3d 239, 244 (2d Cir. 2007).

A. <u>GERNA Makes a Prima Facie Case of Long-Arm Jurisdiction Under N.Y. C.P.L.R. §</u>
   <u>302(a)(1).</u>

Recognizing that SFK lacks the requisite contacts with New York to be subject to

general jurisdiction here, GERNA argues that SFK is subject to specific jurisdiction under New

York's long-arm statute. N.Y. C.P.L.R. § 302(a)(1). The statute provides that "a court may

exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent:

(1) transacts any business within the state or contracts anywhere to supply goods or services

through the state." <u>Id.</u> Therefore, the relevant inquiry has two parts: "(1) whether the defendant

transacts any business in New York and, if so, (2) whether this cause of action arises from such a

business transaction." <u>Rosenblatt v. Coutts & Co. AG</u>, 750 F. App'x 7, 9 (2d Cir. 2018) (citing

<u>Licci v. Lebanese Canadian Bank, SAL</u>, 673 F.2d 50, 60 (2d Cir. 2012)).

Whether a defendant transacts business in New York is determined based on the

"totality of the circumstances." <u>Berkshire Capital Group, LLC v. Palmet Ventures, LLC</u>, 307 F.

App'x 479, 480 (2d Cir. 2008). The Second Circuit considers the following factors from

<u>Sunward Electronics, Inc. v. McDonald</u>, "(i) whether the defendant has an ongoing contractual

relationship with a New York corporation; (ii) whether the contract was negotiated or executed

in New York and whether, after executing a contract with a New York business, the defendant

has visited New York for the purpose of meeting with parties to the contract regarding the

relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the

contract requires parties to that contract to send notices and payments to the forum state or

subjects them to supervision by the corporation in the forum state." <u>Rosenblatt</u>, 750 F. App'x at

10 (citing 362 F.3d 17, 22-23 (2d Cir. 2004)).

GERNA argues that SFK is subject to personal jurisdiction in New York because SFK and GERNA conducted in-person meetings at GERNA's office in Schenectady, New York. (ECF 44, Mollevik Decl. ¶¶ 5-8.)  While GERNA does not allege that the initial Supply Agreement was negotiated in New York, GERNA alleges the parties negotiated Addendum Two to the Supply Agreement partially through in-person meetings in New York between David Mollevik, a GERNA Senior employee, and Steven Curtis, a Sales Director for SFK.  (Id. ¶¶ 1-7.) SFK contends that this does not confer jurisdiction because the meetings in New York "were a lesser aspect" of the overall relationship between the parties.  (ECF 46 ¶ 4.)  SFK relies on U.S. Theatre Corp v. Gunwyn/Lansburgh Ltd. Partnership, arguing that Courts do not confer jurisdiction when a visit is to merely "alleviate problems under a pre-existing relationship."  825 F. Supp. 594, 596 (S.D.N.Y. 1993).

New York courts have held that subsequent contract negotiations that occur in New York are sufficient to support jurisdiction when they are "essential" or "substantially advance" the business relationship.  Three Five Compounds, 11 Civ. 1616 (RJH), 2011 WL 5838697, at *4 (S.D.N.Y. Nov. 21, 2011).  The New York meetings substantially advanced the relationship as the parties negotiated "the terms of Addendum Two, including pricing and volume commitment for the main bearing at issue in this case."  (ECF 44, Mollevik Decl. ¶ 7); see CutCo, 806 F.2d at 367-69 (finding that defendant's visit to New York "created the likelihood of a more solid business relationship" and led to a new agreement established prima facie jurisdiction); MasterCard Intern. Inc. v. Federation Internationale de Football Ass'n, 06 Civ. 3036 (LAP), 2006 WL 2320408, at *3 (S.D.N.Y. Aug. 10, 2006) (finding that two days of meetings in New York, although the only time the defendants entered the state, "for the announced purpose of negotiating" the parties' contract established prima facie jurisdiction).

Ultimately, the addendum that was negotiated in-part in New York was adopted and added the main bearings, which are at issue, to the Supply Agreement.  See Premier Lending Servs, Inc. v. J.L.J. Associates, 924 F. Supp. 13, 16-17 (S.D.N.Y. 1996) (B.D. Parker, J.) ("[T]he location of a meeting where the terms of an allegedly breached contract are negotiated carries jurisdictional significance.").

Further, the other Sunward factors weigh in GERNA's favor: SFK had an ongoing contractual relationship with a New York company[1] (Amend. Compl't ¶ 4), the Supply Agreement was governed by New York law (ECF 39-1 at 22 ¶ 20), SFK continued to meet with GERNA in their New York office to discuss the ongoing business relationship (ECF 44 ¶ 8), and notices were sent to GERNA's office in Schenectady, New York (ECF 39-1 at 4 ¶ 4).  See 362 F.3d at 23 (finding that the defendants transacted business in New York when defendant maintained an on-going commercial relationship with a New York business and agreed to a New York choice of law clause).  Considering the totality of the circumstances and the facts in light most favorable to the plaintiff as the non-moving party, the Court concludes that SFK "purposefully availed" itself of conducting activities within the forum state.

GERNA must also show that the claims in this action arise from SFK's New York transactions under section 302(a).  SFK argues that GERNA has failed to make this showing because the entirety of the contract was performed outside of New York.  However, there need only be an "articulable nexus" or "substantial relationship" between the transaction and the claim asserted.  D&R Global Selections, S.L. v. Bodega Olegario Falcon Pineiro, 29 N.Y.3d 292, 299

---

[1] GERNA is a limited liability company, which takes the citizenship of each of its members.  Bayerische Landesbank, New York Branch v. Aladdin Capital Management LLC, 692 F.3d 42, 49 (2012).  GERNA has one member, GE, which is incorporated in New York and has its principal place of business in Massachusetts, and, thus, is a citizen of both New York and Massachusetts.  (Amend. Compl't ¶ 4.)

(2017).  After establishing that the defendants transacted business in New York, a plaintiff "need show only that the cause of action is sufficiently related to the business transacted that it would not be unfair to deem it to arise out of the transacted business, and to subject the defendant[ ] to suit in New York."  Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 59 (2d Cir. 1985) (collecting cases).  Here, GERNA brings contract claims against SFK, which arise from the main bearings that were added in Addendum Two to the Supply Agreement.  Accordingly, the negotiation of the addendum in New York is substantially related to the claims against SFK. Accordingly, New York's long-arm statute supports the exercise of personal jurisdiction over SFK.

### B.  The Exercise of Personal Jurisdiction Over SFK is Consistent with Due Process.

The Court must next determine whether the exercise of personal jurisdiction comports with due process.  Sunward, 362 F.3d at 24.  The due process analysis consists of two prongs: the minimum contacts inquiry and the reasonableness inquiry.  Charles Schwab, 883 F.3d at 82.  The minimum contacts inquiry requires the evaluation of "the quality and nature of the defendant's contacts with the forum state under a totality of the circumstances test."  Id.  Once minimum contacts are established, the court must determine, under the reasonableness inquiry, whether personal jurisdiction comports with "traditional notions of fair play and substantial justice."  Sunward, 362 F.3d at 24.

Under the first prong, SFK established minimum contacts with New York, including, by visiting the State to negotiate the Second Addendum and continuing its visits there. See MasterCard, 2006 WL 2320408, at *4 (finding that the defendant "purposefully availed" itself of the privilege of conducting business in New York when it negotiated key aspects of a

contract in New York for two days and then continued to communicate with the plaintiff).  Next, under the second prong, "the defendant has the burden to 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable'" under traditional notions of "fair play and substantial justice." D&R Global, 29 N.Y.3d at 300 (quoting LaMarca v. Pak-Mor Manufacturing Co., 95 N.Y.2d 210, 217-18 (2000)).  Based on SFK's prior contacts with New York, and its status as a parts manufacturer in Pennsylvania selling parts to a customer's technical specificities, there are no circumstances presented that would make SFK's defense of this action in New York unreasonable.

II.    Venue.

Defendant also moves to dismiss for improper venue.  Rule 12(b)(3), Fed. R. Civ. P.  In its reply to SFK's motion to dismiss, GERNA conceded that venue is improper in the Southern District of New York under 28 U.S.C. § 1391.  (ECF 42 at 11.)  GERNA claims that "based on further development of the facts" it now concludes that the proper intrastate venue would be the Northern District of New York and requests that the action be transferred there under 28 U.S.C. § 1404(a).  (Id.)  In the alternative, Defendant moves to transfer to the Northern District of Georgia.

Whether a venue is proper is generally governed by statute, which provides that "a civil action may be brought in—(1)  a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the of the events or omissions giving rise to the claim occurred . . . or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the Court's personal jurisdiction with

respect to such action." 28 U.S.C § 1391(b)(1)-(3). SFK is a Delaware corporation with its principal place of business in Lansdale, Pennsylvania. Because SFK does not reside in New York, venue would be improper in New York under 28 U.S.C § 1391(b)(1). Further, the negotiations for Addendum Two occurred in in Schenectady, New York, which is in the Northern District of New York, and not in this district. (ECF 44 ¶ 6.) The Court, therefore, agrees that venue is improper under 28 U.S.C. § 1391(b)(2), as a "substantial" part of the events giving rise to the claim occurred in the Northern District of New York and not in this district. As its possible for this action to be brought pursuant to sections 1391(b)(1) and (2), section 1391(b)(3) does not apply.

When venue is improper, the district court may dismiss, or "in the interest of justice . . . may transfer any civil action to any other district of division where it may have been brought . . . ." 28 U.S.C. § 1404(a). The decision whether to transfer or dismiss "lies within the sound discretion of the district court." Minette v. Time Warner, 997 F.2d 1023, 1026 (2d Cir. 1993). Ordinarily, in considering a motion to transfer under 28 U.S.C. § 1404(a), a Court would weigh the relevant factors.[2] Atlantic Marine Const. Co. v. U.S. Dist. Ct. for Western Dist. Of Texas, 571 U.S. 49, 62-3 (2013). But "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause" absent extraordinary circumstances. Id. at 62. Public policy favors the enforcement of a forum-selection clause as it has "the 'salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of

---

[2] In deciding whether transfer would serve in the interest of justice, courts in this Circuit generally consider the following factors: (1) the plaintiff's choice of forum; (2) the convenience of witnesses; (3) the location of relevant documents and relative ease of access to sources of proof; (4) the convenience of parties; (5) the locus of operative facts; (6) the availability of process to compel the attendance of unwilling witnesses; and (7) the relative means of the parties. See N.Y. Marine & General Insurance Co. v. Lafarge North America, Inc., 599 F.3d 102, 112 (2d Cir. 2010).

pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be devoted to deciding those motions.'" <u>Magi XXI, Inc. v. Stato della Citta del Vaticano</u>, 714 F.3d 714, 722 (2d Cir. 2013) (quoting <u>Carnival Cruise Lines, Inc. v. Shute</u>, 499 U.S. 585, 593-94 (1991)).

   To determine whether a forum-selection clause mandates dismissal or transfer, courts engage in a three-part inquiry: (1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory; and (3) whether the claims and parties involved in the suit are subject to the forum-selection clause. <u>Phillips</u>, 494 F.3d at 383. If the party seeking enforcement has established the three conditions, the forum-selection clause is presumptively enforceable. <u>Altvater Gessler-J.A. Baczewski Intern. (USA) Inc. v. Sobieski Destylarnia S.A.</u>, 572 F.3d 86, 89 (2d Cir. 2009). Then, the burden shifts to the party resisting enforcement to rebut the presumption "by making a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" <u>Phillips</u>, 494 F.3d at 383-84 (quoting <u>M/S Bremen v. Zapata Off-Shore, Co.</u>, 407 U.S. 1, 15 (1972)).

   As the parties have signed differing forum-selection clauses in the Supply Agreement and Tolling Agreement, the parties' arguments focus on the third element of the inquiry. "The court must 'examine the substance of the claims as they relate to the precise language' of the specific clause at issue." <u>Alvater Gessler-J.A.</u>, 572 F.3d at 90. As forum-selection clauses are "creature[s] of contract," determining whether and parties are subject to the clause is a question of contract interpretation. <u>Phillips</u>, 494 F.3d at 386. While questions of enforceability are resolved under federal law, questions of interpretation "are resolved under the substantive law designated in an otherwise valid contractual choice-of-law clause." <u>Martinez v.</u>

Bloomberg LP, 740 F.3d 211, 224 (2d Cir. 2014).  Both the Tolling Agreement and Supply

Agreement provide that New York law will govern.[3]  (ECF 43-3 ¶ 7; ECF 39-1 at 22 ¶ 20.)

When there are two or more "different contracts, each containing a forum selection clause

designating a different forum, and the parties do not dispute the facts which gave rise to those

two conflicting contracts, the court must decide as a matter of law . . . which forum selection

clause governs."  Asoma Corp. v. SK Shipping Co., Ltd., 467 F.3d 817, 822 (2d Cir. 2006).

A.  The Tolling Agreement's Forum-Selection Clause Does Not Govern GERNA's Claims.

GERNA argues that the forum-selection clause in the parties' Tolling Agreement

requires that the case be transferred to the Northern District of New York.  It is undisputed that

on November 23, 2021, the Parties entered into the Tolling Agreement.  In the Tolling

Agreement, the parties agreed not to commence a legal action during settlement negotiations and

tolled any applicable statute of limitations.  (ECF 43-3.)  The Tolling Agreement contains a

forum-selection clause where the parties specifically agreed that "any and all disputes relating to

or arising from" the Tolling Agreement "shall be settled . . . by a federal court of competent

jurisdiction in New York having venue over the subject matter."  In full, the relevant section,

titled "Disputes Regarding This Agreement," reads as follows:

> Any and all disputes relating to or arising from this Agreement
> shall be settled (i) first, by an attempt at mediation by the Parties,
> with the Parties to split the costs of such mediation; and (ii)
> second, by a federal court of competent jurisdiction in New York
> having venue over the subject matter.  The Parties specifically

---

[3] In the Tolling Agreement, the parties agreed that "This Agreement shall in all respects be interpreted, enforced, and governed by and under the laws of the State of New York without regard to its choice of law rules."  (ECF 43-3 ¶ 7.) In the Supply Agreement, Appendix II states that the parties' contract, "shall in all respects be governed by and interpreted in accordance with the substantive law of the State of New York, U.S., excluding its conflicts of law provisions."  (ECF 39-1, Appendix II ¶ 20.)

> consent to jurisdiction of the federal courts sitting in New York
> solely related to any lawsuits regarding this Agreement.

ECF 43-3 at 3 ¶ 8.

The Second Circuit construes the phrase "arising from" in the forum-selection clause context narrowly. <u>Alvater Gessler-J.A.</u>, 572 F.3d at 91.  When a forum-selection clause uses this language, courts must determine whether a plaintiff's claims are based on rights that "originate from" the agreement containing the forum-selection clause.  <u>Kumar v. Opera Solutions OPCO, LLC</u>, 20-cv-6824 (GHW), 2021 WL 4442832, at *11 (S.D.N.Y. Sept. 28, 2021).  Here, the Tolling Agreement merely governed the parties' relationship as they investigated GERNA's claims and explored settlement.  (ECF 43-3.)  GERNA has not brought claims against SFK for violation of the Tolling Agreement.  Instead, GERNA's claims are based on its contractual rights from the Supply Agreement and, therefore, the claims are not subject to the Tolling Agreement's forum-selection clause.  <u>Id.</u>, at *12 (holding that because the plaintiff's employment discrimination claims did not "arise out of" a later-signed non-disclosure agreement, the claims were not subject to the NDA's forum-selection clause); <u>Alvater Gessler-J.A.</u>, 572 F.3d at 91 (finding when the plaintiff's claims were "not based on rights originating from" certain licensing agreements, the claims were not subject to the forum-selection clauses within the agreements).

B. <u>The Supply Agreement's Forum-Selection Clause Governs GERNA's Claims.</u>

SFK argues that the forum-selection clause requires that the case be transferred to the Northern District of Georgia.  The Supply Agreement became effective on January 1, 2015, and applied to Purchase Orders issued by GERNA for specified SFK part components.  The Supply Agreement states that "In the event of a claim or controversy arising out of or relating to this Agreement" if the parties fail to negotiate a settlement, "they shall [have] the right to pursue

their legal, equitable and contract rights as set forth in Section 21 of the Order." (ECF 39-1 ¶

11.) Section 21, labeled "Purchase Terms" and attached to the Supply Agreement, states that

litigation "arising out of this Order . . . may only be brought in the U.S. District Court for the

Northern District of Georgia." (Id.) The provision states in full as follows:

> If Seller is a permanent resident of the U.S., or a corporation or
> partnership existing under the laws of the U.S., and Seller and
> Buyer have a controversy, dispute or difference arising out of this
> Order ("Dispute"), either party may initiate litigation. Litigation
> may be brought only in the U.S. District Court for the Northern
> District of Georgia or, if such court lacks subject matter
> jurisdiction, in the State or Superior Court of Georgia in Cobb
> County. The parties submit to the jurisdiction of said courts and
> waive any defensive of forum non conveniens. The parties waive
> all rights to jury trials.

ECF 39-1, Appendix II ¶ 21.1.

    i.    <u>The Supply Agreement Reasonably Communicated the Terms of the Forum-Selection
Clause.</u>

        The Court first considers whether the forum-selection clause was reasonably

communicated to GERNA. A forum-selection clause is reasonably communicated where it

appears in clear and unambiguous language. See Ujvari v. 1stdibs.com, Inc., 16 Civ. 2216

(PGG), 2017 WL 4082309, at *8 (S.D.N.Y. Sept. 13, 2017) (finding that a forum-selection clause

was "reasonably communicated" when the clause appeared in a standard section in the main

body of an agreement, was signed by the plaintiff, and used clear, unambiguous language).

        The forum-selection clause was incorporated into the Supply Agreement to which

GERNA was a signatory. GERNA relies on the terms of the Supply Agreement in bringing the

claims against SFK and GERNA makes no argument that the terms were not reasonably

communicated.

    ii.    <u>The Forum-Selection Clause is Mandatory.</u>

        The second step requires courts to determine "whether the parties are required to bring any dispute to the designated forum or simply permitted to do so."  <u>Phillips</u>, 494 F.3d at 383.  A forum-selection clause is considered mandatory where "it confers exclusive jurisdiction on the designated forum" or "incorporates obligatory venue language."  <u>Global Seafood Inc. v. Bantry Bay Mussels Ltd.</u>, 659 F.3d 221, 225 (2d Cir. 2011).  Use of a term like "shall" typically renders a forum-selection clause mandatory.  <u>LVAR, L.P. v. Bermuda Commercial Bank Ltd.</u>, 649 F. App'x 25, 27 (2d Cir. 2016) (summary order); <u>see also</u> <u>Salis v. American Export Lines</u>, 331 F. App'x 811, 814 (2d Cir. 2009) (holding that the forum-selection clause was mandatory where it stated "any claim or dispute arising under or in connection with this [Agreement] . . . shall be referred to and decided by Oslo City Court, Norway").

        The forum-selection clause in the Supply Agreement between GERNA and SFK is mandatory.  The Supply Agreement provides that the parties "shall [have] the right to pursue their legal, equitable and contract rights as set forth in Section 21 of the Order."  (ECF 39-1 ¶ 11.)  The use of the word "shall" in this context makes the forum-selection clause mandatory and not permissive.  Further, in the attached Appendix Two Section 21, the clause provides that the parties' claim "may be brought only in the U.S. District Court for the Northern District of Georgia." (ECF 39-1, Appendix II ¶ 21.1.)  The parties' use of the phrase "only" establishes Georgia as an obligatory venue, giving mandatory force to the forum-selection clause.  <u>Raad v. Bank Audi SAL</u>, No. 21-2612, 2022 WL 17684581, at *3 (2d Cir. 2022) (finding a forum-selection clause is mandatory when it has language that designates "the selected fora as the sole site[ ] of jurisdiction").

iii.    The Parties and Claims Are Subject to the Forum-Selection Clause.

The third steps "asks whether the claims and parties involved in the suit are subject to the forum selection clause."  Phillips, 494 F.3d at 383.  As previously discussed, to make this determination, the court must consider the substance of GERNA's claims—for breach of express warranty, breach of implied warranty of merchantability, indemnity, and request for a declaratory judgment—as they relate to the "precise language" of the forum-selection clause. Alvater Gessler-J.A., 572 F.3d at 90.

GERNA disputes that the claims are subject to the forum-selection clause. GERNA urges that because the Supply Agreement expired on December 31, 2018, it's 407 purchases of SFK main bearings in 2019—out of a total of 1,723 units ordered—are not governed by the Supply Agreement.  (ECF 42 at 15; Amend. Compl't ¶ 15.)  Instead, GERNA asserts that the individual 2019 purchases are governed by GERNA's 2018 Purchase Terms that require arbitration in New York City under the rules of the International Chamber of Commerce.[4] (ECF 42 at 16; 39-3 ¶ 20.2.)  But GERNA has not moved to compel arbitration.

SFK urges that, based on GERNA's argument, GERNA concedes that the units ordered between 2017 and 2018 are governed by the Supply Agreement.[5]  The Court agrees.

---

[4] The 2018 Purchase Terms forum-selection clause states: "In the event of any dispute arising out of or in connection with the present contract" following a failure to mediate, "such Dispute shall be finally settled under the Rules of Arbitration and Conciliation of the ICC (the 'ICC Rules') by one or three arbitrators appointed in accordance with such ICC Rules.  The place for arbitration shall be New York, New York, U.S., and proceedings shall be conducted in English." (ECF 39-3 ¶ 20.2.)
[5] Alternatively, SFK argues that an unsigned Addendum Number Three to the Supply Agreement, which would have extended the forum-selection clause, would govern the 2019 purchases.  However, the Court does not reach this argument as the parties' conduct in abiding by the Supply Agreement's terms evidenced their mutual assent to embrace the "same provisions and terms as their prior contract."  North American Hyberbaric Center v. City of New York, 198 A.D.2d 148, 148 (1st Dept 1993) (finding if the parties continued to perform by an agreement after it expired, "an implication arises that they have mutually assented to a new contract containing the same provisions as the old").

Further, in the Amended Complaint, GERNA states that each Purchase Order of SFK main bearings was "governed by the Supply Agreement and by either the 2016 Purchase Terms or 2018 Purchase Terms." (emphasis added) (Amend. Compl't ¶¶ 50, 62, 87.)  GERNA seeks to enforce its contract rights, the substance of which is that SFK breached its warranties as to the SFK main bearing part in the Supply Agreement.  The Supply Agreement provides that a case or controversy "arising out of" or "relating to this Agreement" "shall . . . only" be commenced in the U.S. District Court of Northern Georgia.  (ECF 39-1 ¶ 11, Appendix II ¶ 21.1.)  As GERNA's contract claims "arise out of" the Supply Agreement, the claims are subject to the Supply Agreement's forum-selection clause.  See Phillips, 494 F.3d at 390 (finding a forum-selection clause that contained the phrase "arise out of" would govern claims that originated from that specified agreement); Reed International, Inc. v. Afghanistan International Bank, 657 F. Supp. 3d 287, 308-09 (S.D.N.Y. 2023) (Ramos, J.) (holding that a breach of contract claim based on an alleged breach of agreements, is subject to the forum-selection clause of those agreements). Further, if there was a conflict between the terms of the Supply Agreement and Purchase Terms, the Parties agreed that the Supply Agreement takes precedence.  (ECF 39-1 ¶ 1(c).)  Therefore, the claims in this action fall within the broad language of the forum-selection clause.

iv.    GERNA Does Not Rebut the Presumption of Enforceability.

As noted, a forum selection clause is presumptively enforceable if it is communicated to the resisting party, is mandatory, and covers the claims in dispute.  Phillips, 494 F.3d at 383.  Therefore, the burden shifts to GERNA to make a sufficient showing that enforcement would be unreasonable, unjust, or invalid.  Id. at 383-84.

In its brief, GERNA asserts that the Northern District of Georgia has no connection to this case and no local interest as the relevant agreements are governed by New York law. However, litigating in the Northern District of Georgia conforms to the parties' expectations when the Supply Agreement was executed. Additionally, GERNA has not alleged any circumstances that would prevent it from litigating in the Northern District of Georgia. See Phillips, 494 F.3d at 393. Therefore, GERNA fails to overcome the presumptive enforceability of the forum-selection clause. For the foregoing reasons, the Court concludes that the forum-selection clause of the Supply Agreement applies to GERNA's claims and the motion for transfer will be granted.

III.    Dismissal for Failure to State a Claim or, Alternatively, to Compel Arbitration.

As the Court finds that transfer is appropriate, it defers its decision on the defendant's motion to dismiss for failure to state a claim to allow the transferee court an opportunity to consider the merits of the case. There is reference in the title of SFK's motion to compelling arbitration, but no substantive argument in the body of the motion. The transferee court will decide whether the argument has been waived.

CONCLUSION

For these reasons, SFK's motion to transfer venue to the U.S. District Court of the Northern District of Georgia is GRANTED. SFK's motion to dismiss for failure to state a claim or, alternatively, to compel arbitration is reserved for the transferee court. The Clerk is directed to administratively terminate the motion and the related letter motion. (DE 36, 49.) The Clerk shall transfer the action and close the case in this district.

- 19 -

SO ORDERED.

P. Kevin Castel
United States District Judge

Date:   February 7, 2025
        New York, New York